# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2019, 6:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane Ann Noblitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Perry K. Davis,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 14, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2619<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable James D. Worton,<br>Judge<br><br>Trial Court Cause No.<br>03D01-1804-F3-2294 |

**Tavitas, Judge.**

# Case Summary

Perry Davis appeals his sentences for robbery, a Level 5 felony, and criminal confinement, a Level 5 felony. We affirm.

# Issue

Davis raises one issue, which we restate as whether his sentences are inappropriate in light of the nature of his offenses and his character.

# Facts

In October 2017, W.M. agreed to work as a confidential informant in Bartholomew County. On April 19, 2018, W.M. ran into her friend, Davis. As they were walking, Davis led W.M. toward an apartment where Davis' brother, Randy Wilson, and Willowdale "Ann" Bennett were located. When they arrived, Wilson was on a speakerphone with Chrissy Coatsworth, who accused W.M. of being a confidential informant. Davis took W.M.'s purse, dumped the contents out, and searched the purse. Davis also told W.M. that she was going to be scalped. Coatsworth heard Wilson say that he was going to "shave" W.M.'s head. Tr. Vol. II p. 139. Wilson also accused W.M. of being a confidential informant and punched W.M. in the face. W.M. fell and was dazed from Wilson's punch.

[4] W.M. thought she saw Davis holding a gun.[1] Wilson picked up cable wires to bind W.M., but someone knocked on the door. Wilson and Davis went outside to talk to the person, leaving W.M. inside with Bennett. W.M. saw her cell phone on the counter and tried to grab it. Bennett pushed W.M. down and slapped her, and they wrestled for W.M.'s phone. W.M. threw the phone and ran for the door. As W.M. ran out the door, someone grabbed her hair, and she fell to the ground. W.M. was screaming and halfway out the door, and someone was trying to pull her inside by her hair. A neighbor saw the activity, and Davis said, "the neighbor[']s out[.] [L]et her go. . . ." *Id.* at 69. They released W.M., and she ran away. W.M. had a "gash" on the top of her head that required staples, a black eye, scrapes and cuts, and missing hair. *Id.* at 71.

[5] The State charged Davis with robbery resulting in bodily injury, a Level 3 felony; criminal confinement resulting in bodily injury, a Level 5 felony; battery resulting in moderate bodily injury, a Level 6 felony; and theft, a Class A misdemeanor. A jury found Davis guilty of robbery, a Level 5 felony; criminal confinement, a Level 5 felony; battery, a Class A misdemeanor; and theft, a Class A misdemeanor. The trial court vacated the battery and theft convictions due to double jeopardy concerns.

[6] At sentencing, the trial court found no mitigating circumstances. The trial court found the following aggravating circumstances: (1) Davis' history of criminal or

---

[1] A realistic-looking pellet gun was later found at the house.

delinquent behavior; (2) Davis recently violated the conditions of probation, parole, community corrections placement, or pretrial release granted to him; (3) Davis had the opportunity for treatment and was unsuccessful; (4) Davis was placed on probation multiple times and "had multiple petitions to revoke probation filed against him;" and (5) the harm, injury, loss, or damage suffered by the victim was "significant and greater than the elements necessary to prove the commission of the offense." Appellant's App. Vol. II p. 154. The trial court then sentenced Davis to consecutive sentences of five years for the robbery conviction and four years for the criminal confinement conviction, for an aggregate sentence of nine years.

## Analysis

[7] Davis contends that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied.*

[8] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)), *trans. denied.* In conducting our review, we do

not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)). When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081.

[9] Here, Davis was convicted of two Level 5 felonies. The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. *See* Ind. Code § 35-50-2-6. The trial court sentenced Davis to five years for robbery, a Level 5 felony, and four years for criminal confinement, a Level 5 felony, with the sentences to be served consecutively for an aggregate sentence of nine years.

[10] Regarding the nature of the offenses, Davis, his brother, and another woman robbed, beat, and confined W.M. because they thought she acted as a confidential informant against someone else. During the incident, Davis threatened to scalp W.M. W.M. escaped only when a neighbor heard her screaming and saw the attack. As a result of the attack, W.M. had a "gash" on the top of her head that required staples, a black eye, scrapes and cuts, and missing hair. Tr. Vol. II p. 71. In the presentence investigation, Davis claimed to have been in the "wrong place at the wrong time" and denied battering W.M. but conceded that he "did not do anything to help her." Appellant's App. Vol. III p. 9.

[11] As to Davis' character, twenty-two-year-old Davis argues that we should revise his sentence because: (1) he apologized and assumed responsibility for his actions; (2) he requested drug treatment: (3) he participated in programs at the jail; (4) he has a family history of abuse and drug addiction; and (5) he has a minimal criminal history. At his sentencing hearing, Davis downplayed his criminal history. The record, however, reveals that, as a juvenile, Davis participated in an informal adjustment in 2010 for an act that would have been battery if committed by an adult, a Class A misdemeanor. In 2013, Davis was adjudicated a delinquent for battery resulting in bodily injury, a Class A misdemeanor, and for resisting law enforcement, a Class A misdemeanor. As an adult, Davis has a 2014 conviction for domestic battery, a Class A misdemeanor; a 2017 conviction for possession of marijuana, a Class B misdemeanor; and a 2017 conviction for battery resulting in bodily injury, a Class A misdemeanor. At the time of the instant offense, he was on probation for the battery and possession of marijuana convictions. In his presentence investigation, Davis admitted to regular use of marijuana and methamphetamine and experimentation with valium or Xanax and Ecstasy/MDMA.

[12] We acknowledge Davis' difficult and troubled childhood and the apparent influence of his brother in these offenses. Given the brutality of the acts against W.M., Davis' criminal history, and the fact that Davis downplays his involvement in these offenses, however, we cannot say that the nine-year sentence imposed by the trial court is inappropriate.

# Conclusion

Davis' nine-year sentence is not inappropriate.  We affirm.

Affirmed.

Crone, J., and Bradford, J., concur.